UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PETER P. TRUMAN, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>PAULA ARMSTRONG )<br>and EDIE SMITH, )<br>)<br>    *Defendants* ) | No. 2:17-cv-00004-DBH |

## ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS AND RECOMMENDED DISMISSAL OF THE CASE

The plaintiff has filed suit against two employees in the Maine offices of United States Senator Angus King claiming that they discriminated against him because of his disability. I grant the plaintiff's request for leave to proceed *in forma pauperis*, but recommend that the court dismiss the action with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I. Application To Proceed *in Forma Pauperis*

*In forma pauperis* status is available under 28 U.S.C. § 1915(a)(1). In his application to proceed *in forma pauperis* – that is, without prepaying fees or costs – the plaintiff lists his total monthly income as $753.00, consisting entirely of Social Security Disability and Supplemental Security Income payments. ECF No. 3 ¶ 2. The plaintiff's only listed asset is a 1996 vehicle with an approximate value of $300.00, and he states that he has $175.53 in a bank account. *Id*. ¶¶ 4-5. The plaintiff's expenses total $619.00 per month, consisting of rent, food, and transportation costs. *Id*. ¶ 6. The plaintiff lists no dependents, and no outstanding financial obligations. *Id*. ¶¶ 7-8. These financial circumstances entitle him to proceed *in forma pauperis*.

## II. Section 1915(e)(2)(B) Review

### A. Applicable Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding *in forma pauperis*, however, "the court shall dismiss the case at any time if the court determines[,]" *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. United States Dist. Court S.D. Iowa*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").[1]

When considering whether a complaint states a claim for which relief may be granted, a court must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that

---

[1] Section 1915(d) was subsequently renumbered to section 1915(e).

pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted, the statute that provides for waiver of the filing fee also requires the court to determine whether the plaintiff's case may proceed. In other words, the plaintiff's complaint must be dismissed if the court finds it to be frivolous or malicious, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In this regard, a *pro se* plaintiff's complaint must be read liberally. *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002).

### B. Factual Background

So read, the plaintiff's complaint alleges that he reached out to both the Washington, D.C., and Maine offices of United States Senator Angus King on multiple occasions in 2013, offering his services as a volunteer, and that defendants Paula Armstrong and Edie Smith, members of Senator King's staff, discriminated against him based on his disability by failing to give him appropriate volunteer work. Complaint (ECF No. 1) ¶¶ 1, 4-10. The plaintiff had met Senator King when the plaintiff was a member of the Maine House of Representatives from Biddeford from 1975-79 and Senator King was an attorney and lobbyist. *Id.* ¶ 1. He had volunteered in 2012 for then-Candidate King's Senate campaign and had made monetary contributions to that campaign totaling $1,000. *Id.* ¶¶ 1-3. At the outset of the plaintiff's work as a volunteer for the King campaign, he "let it be known by letter and via telephone the fact that he was afflicted with a severe major depression 20 years ago, and asked whether or not this fact would preclude him

3

from volunteering for Mr. King in his quest for the U.S. Senate." *Id*. ¶ 11. He states that "[t]he response from all quarters was an, empathetic and emphatic, No." *Id*.

The plaintiff states that, in January 2013, after he wrote to Senator King offering to volunteer for him doing constituent work in Maine, he quickly received a phone call from Senator King's Washington, D.C., staff, accepting the offer and stating that defendant Edie Smith shortly would be contacting him with an assignment. *Id*. ¶ 4. When the plaintiff asked to volunteer for Senator King after the senator assumed office, he "let it be known to all" that his request to volunteer, coupled with his political donation to the King campaign, "was not, in any way, a quid pro quo." *Id*. ¶ 12. "The 'Team' concurred." *Id*. The staff member who phoned the plaintiff to inform him of the acceptance of his offer told him that Senator King was "very pleased" and "glad to have a Volunteer who had political . . . experience, as a public office holder, and a person who has helped a score of men and women who sought political office in Maine in their campaigns." *Id*. ¶ 4.

The plaintiff heard nothing from Smith as of spring 2013, at which point he obtained a phone number for her in Augusta, Maine, and telephoned her. *Id*. ¶¶ 5-6. Smith apologized for the delay, stating that organizational work was still being done and informing the plaintiff that she was well aware that Senator King had approved his request to volunteer. *Id*. ¶ 6. She told him that he would be doing constituent volunteer work out of Senator King's Biddeford, Maine, field office, and that defendant Paula Armstrong would contact him from that field office to assign him work duties. *Id*.

When the plaintiff heard nothing from Armstrong by early summer 2013, he phoned her to ask why she had not contacted him sooner. *Id*. ¶ 7. She stated that Senator King's Biddeford office was being closed, that the new office would be in Scarborough, Maine, and that she would

4

contact the plaintiff very shortly to inform him of his constituent duties working from the Scarborough office. *Id*.

When the plaintiff had heard nothing from Armstrong by Labor Day 2013, he phoned her, whereupon she gave him an assignment to compile a list of private schools in York County. *Id*. ¶ 8. The plaintiff considered this "a fake/phony assignment which had, absolutely, nothing to do with the Volunteer work (Political) that Senator King and his Staff thought [the plaintiff] was doing." *Id*. ¶ 9. However, he accepted the assignment, "typed a complete and professional report," and mailed it to Armstrong. *Id*. ¶ 8.

After more weeks went by, the plaintiff again telephoned Armstrong to ask whether she had any other work that he could do. *Id*. ¶ 9. She assigned him to compile another "report," this time listing all of the superintendents in York County. *Id*. The plaintiff again completed the work and mailed it to Armstrong. *Id*. However, shortly thereafter, he informed her that he was not being treated as "a real volunteer who is supposed to be doing, as Senator King's volunteer, vital and problematic constituent work[.]" *Id*. ¶ 10. Hence, he "charged" her "Political Consulting fees" of $500 for each of the two "non-volunteer services" that he had provided for her. *Id*. Armstrong claimed that the plaintiff had "performed volunteer work[,]" which he states "was false and untrue." *Id*.

The plaintiff seeks "Tort Damages" of $75,000 and requests a jury trial. *Id*. at [3]. He invokes (i) "all [d]iscrimination provisions and clauses" of the U.S. Constitution, specifically, his 14th amendment right to equal protection of the laws, (ii) the anti-discrimination provision of the Universal Declaration of Human Rights ("UDHR") within the United Nations Charter, and (iii) the Americans with Disabilities Act ("ADA"), which he describes as providing "more fine-tuned" protection against discrimination based on disability. *Id*.

### C. Discussion

The plaintiff's complaint is most sensibly read as alleging disability discrimination. He does not appear to press any claim to the $1,000 that he alleges he "charged" for his work on the projects assigned to him by Armstrong, nor, given his alleged unilateral demand for payment following his completion of work undertaken as a volunteer, has he stated any grounds in contract or tort that would allow him to recover that sum. *See, e.g.*, *Tobin v. Barter*, 2014 ME 51, ¶ 9, 89 A.3d 1088, 1091 ("To demonstrate that the parties had a legally binding contract, the plaintiff must establish that there was a meeting of the minds between the parties – or mutual assent to be bound by all the material terms of the contract.") (citations and internal punctuation omitted); *Paffhausen v. Balano*, 1998 ME 47, ¶ 8, 708 A.2d 269, 271 ("A valid claim in *quantum meruit* requires: that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment.") (citation and internal quotation marks omitted).

He also does not appear to be seeking specific performance from the offices of Senator King to provide him with a volunteer position that matches his expectations of what tasks should be appropriately assigned to him. Nor could he on the facts alleged. "In order to obtain specific performance of a contract, there must first be a contract to enforce." *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22, 28. "Every contract requires 'consideration' to support it, and any promise not supported by consideration is unenforceable." *Whitten v. Greeley-Shaw,* 520 A.2d 1307, 1309 (Me. 1987). No "consideration" is apparent on the alleged facts. The plaintiff disclaims that his volunteer work was in consideration for his $1,000 in campaign contributions, and he alleges that he sought $1,000 as payment for his volunteer services only after the parties had reached an agreement that he would volunteer and he had already completed two volunteer assignments. *See*

*Doyle v. Lehi City*, 2012 UT App 342, ¶ 44, 291 P.3d 853, 865 (volunteer youth baseball coach did not state claim for breach of contract against city when there was no indication that the putative coaching contract was supported by consideration).

Turning to the disability discrimination claim that the plaintiff does appear to press, it is not clear whether he purports to sue Smith and Armstrong in their individual capacities, their official capacities, or both.

"Suits against public employees in their official capacities are treated as suits against the public employer," *Langlois v. Pacheco*, Civil Action No. 16-12109-FDS, 2017 WL 2636043, at *7 (D. Mass. June 19, 2017), in this case, the United States.

> [T]he United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. The protection of sovereign immunity extends to federal officers acting in their official capacities and the bar of sovereign immunity cannot be avoided by merely suing officers and employees of the United States. Because sovereign immunity raises a jurisdictional bar to suit, absent an explicit waiver of sovereign immunity, suits against the government or its officials must be dismissed.

*St. John v. U.S. Dep't of Justice*, CASE NO. 1:17-CV-0736, 2017 WL 3237875, at *2 (N.D. Ohio July 31, 2017) (footnotes omitted). The plaintiff has not argued that, to the extent that he sues Smith and Armstrong in their official capacities, any such waivers apply, and my research indicates that they do not.

For the reasons that follow, and reading the plaintiff's complaint liberally to include discrimination claims against Smith and Armstrong in both their official and individual capacities predicated on the ADA, the federal constitutional right to equal protection of the laws, and the UDHR, I conclude that the complaint must be dismissed pursuant to section 1915 because it seeks

monetary relief from defendants who are immune from such relief and fails to state a claim as to which relief can be granted.[2]

### 1. ADA

#### a. Official Capacity

To the extent that the plaintiff sues Smith and Armstrong in their official capacities pursuant to the ADA, "Congress established a limited waiver of immunity for claims brought by employees of Congress when it passed the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1301 *et seq*." *Niles v. U.S. Capitol Police Bd*., __ F. Supp.3d __, Case No. 16-cv-1209 (TSC), 2017 WL 420113, at *2 (D.D.C. Jan. 31, 2017). "The CAA authorizes 'covered employees' of Congress and its associated entities to sue their 'employing office' under several federal employment statutes, including . . . the ADA." *Id*. However, the plaintiff, who alleges that he sought to work as a volunteer and received no pay in that position, does not meet the definition of a covered employee of the Senate for purposes of the CAA. *See* 2 U.S.C. § 1301(3) & (8) (defining a "covered employee of the Senate" as including "any employee whose pay is disbursed by the Secretary of the Senate") (internal quotation marks omitted). He, therefore, can bring no claim as a matter of law pursuant to the ADA against Smith and Armstrong in their official capacities (that is, against the United States).

#### b. Individual Capacity

To the extent that the plaintiff sues Smith and Armstrong in their individual capacities for violation of the ADA, his claim fails as a matter of law for at least two separate reasons. First, pursuant to the CAA, "a plaintiff may file a complaint only against the employing office, not the individual member of Congress" or congressional staff employee. *Bastien v. Office of Senator*

---

[2] While the plaintiff seeks "Tort Damages," Complaint at [3], his complaint is devoid of any allegations from which one could reasonably infer that he claims that either defendant engaged in any specific tortious conduct against him.

*Ben Nighthorse Campbell*, 390 F.3d 1301, 1304 (10th Cir. 2004); 2 U.S.C. §§ 1405(a), 1408(b). Second, the plaintiff pleads no facts from which one could conclude that either Smith or Armstrong "employed" him. To the contrary, he states that Smith and Armstrong interacted with him at the behest of *their* employer for the purpose of giving him volunteer tasks. "Individuals who are not themselves employers cannot be held liable under the ADA." *Fisk v. Mid Coast Presbyterian Church*, 2:16-cv-00490-JDL, 2017 WL 1755950, at *4 (D. Me. May 4, 2017).

## 2. U.S. Constitutional Rights

### a. Official Capacity

To the extent that the plaintiff sues Smith and Armstrong in their official capacities for violation of his constitutional rights, his claims fails as matter of law "[b]ecause the United States has not waived sovereign immunity in suits claiming constitutional torts[.]" *Garner v. Supreme Court of U.S.*, C/A No. 3:11-2702-TLW-JRM, 2011 WL 7790900, at *3 (D.S.C. Dec. 16, 2011) (rec. dec., *aff'd* May 2, 2012), *aff'd*, 474 Fed. Appx. 387 (4th Cir. 2012).

### b. Individual Capacity

While a plaintiff may not bring a federal constitutional claim against the United States, he may bring such a claim against individual governmental officials personally pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). However, "[a] *Bivens* claim is not available to a plaintiff who has alternative means of obtaining redress, e.g., where a federal statute provides a judicial remedy for the alleged harm." *Hollins v. Samuels*, CIVIL ACTION NO. 1:12-CV-4119-AT-AJB, 2012 WL 12894839, at *2 (N.D. Ga. Dec. 21, 2012). The availability of statutory remedies for disability discrimination such as the ADA and the Rehabilitation Act of 1973 "precludes [the plaintiff] from seeking redress pursuant to a *Bivens* action." *Id*. (citation and internal punctuation omitted). Therefore, as a matter of law, the plaintiff

may not bring claims against Smith and Armstrong in their individual capacities for disability discrimination amounting to a denial of equal protection of the laws in violation of his federal constitutional rights.

### 3. UDHR

To the extent that the plaintiff sues Smith and Armstrong in either their official or individual capacities pursuant to the UDHR, he can bring no claim as a matter of law because the UDHR "is a statement of principles that does not of its own force impose obligations as a matter of international law" and "does not provide a private right of action in an American court." *Young v. Bishop*, Civil Action No. TDC-16-0242, 2017 WL 784664, at *4 (D. Md. Feb. 28, 2017) (citation and internal quotation marks omitted).

## III. Conclusion

For the foregoing reasons, I **GRANT** the plaintiff's application to proceed *in forma pauperis* and recommend that the court **DISMISS** the complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) because it seeks monetary relief from defendants who are immune from such relief and fails to state a claim as to which relief can be granted. If the court agrees that dismissal is appropriate, I further recommend that it **DEEM MOOT** the plaintiff's subsequent filings styled as motions for contempt (ECF No. 8) and for a hearing (ECF No. 9), as well as any relief requested in his filings styled as correspondence (ECF Nos. 6, 10, and 11).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of August, 2017.

>/s/  John H. Rich III
>John H. Rich III
>United States Magistrate Judge